Memorandum of Decision
This is an action for the termination of parental rights of Donna S. and Ernest S., the biological parents of the minor child Ernest S., born May 29, 1988.[2] The petitioner is the Commissioner of the Department of Children and Families (DCF). This child has previously been found to be a neglected child on March 24, 1995 (Keller, J.).The court finds that the mother and father of Ernie have been served, were represented by counsel and appeared for CT Page 10163
The court finds that there is no proceeding pending in any other court affecting the custody of the child. The court heard from two DCF social workers, the child's therapist, a psychiatrist from the Yale Child Study Center, a licensed clinical psychologist, and the respondents. The court received into evidence social studies, court approved expectations signed by the parents, arrest records, and psychiatric and psychological reports.
The court makes the following findings by clear and convincing evidence. The sociological history of the parents was presented in the form of testimony of the social workers and the social study (Exhibit 2). This social history was not challenged by the parents. Essentially, the mother and father were married on August 3, 1991. They had two children, Ernie in 1988 and a sister, Desiree, in 1992. Both parents were actively drinking alcohol to excess in the early 1990's. The mother is now thirty-five years of age and the father is forty-one.
Mother admits that in May, 1994, her husband left to work in Pennsylvania leaving her to care for the children alone. He came home on week-ends. She realizes, in retrospect, that she was anxious, frustrated, and was drinking excessively. She resented her husband's absence from the home. She became agitated and took her anger out on the children by yelling at them and physically abusing them to the extent that Desiree was hospitalized with a broken leg and Ernie had a black eye and bruises on his back. On September 28, 1994, DCF was alerted by the hospital authorities and removed the children from the home.
Desiree was returned to the parents under Protective Supervision on August 25, 1995. She has been a difficult child behaviorally, but she has remained with her parents who are raising her. Ernie has had four placements and four hospitalizations. On one occasion after Ernie was released from Newington Children's Hospital, he was placed in a specialized foster care home. That foster mother was unable to handle Ernie's aggressive behaviors and asked to have him removed. DCF removed him from that foster home and returned him to his parents on July 14, 1995.
At home Ernie continued to be oppositional and self injurious which led to his admission one month later to Elmcrest Hospital. He remained hospitalized for three weeks and again was sent home. CT Page 10164 Again Ernie was out of control and was re-admitted to Elmcrest on October 16, 1995. He remained hospitalized for two months and on December 15, 1995, he was placed in his present foster home. He has been there now for nearly three years and is well adjusted. He feels safe, and, while not free of problems, he has made gains. His foster parents have been very supportive and are willing to provide long term care for the child.
On March 24, 1995 the court set "Expectations" for the parents. The parents were told that successfully fulfilling the expectations would greatly enhance their chances of regaining custody of Ernie. The parents have done more than merely meet the expectations; they have gone beyond the expectations to improve their parenting skills. They have kept DCF aware of their whereabouts. They have consistently visited and kept all their visitation appointments. They have participated in several services involving individual counseling, marriage counseling, parenting skills, and alcohol abuse support groups. They attend weekly Alcoholics Anonymous meetings and a parenting support group through the local hospital. For four years the mother has attended weekly creative parenting sessions. She says she has read approximately twelve books on parenting, Attention Deficit and Hyper-activity Disorder, and children with trauma. She went to Parents Anonymous meetings. She has learned about setting limits and boundaries, rewards, structure and environment, and time-outs. She uses all these techniques with her daughter Desiree. Both she and her husband have been free of alcohol for three or four years.
In addition to Desiree, the parents are taking care of the husband's teen-age daughter (from his first marriage) who has recently come to live with them. The father has also stopped drinking, attends AA, and attended parenting classes and counseling through Casey Family Services. The parents have been able to maintain a stable home and income. They have not used any illegal substances, to the best of the knowledge available to DCF, nor have the parents been involved with the criminal justice system.
Dr. Howard Krieger was qualified as an expert in child psychology. He has spent some ten hours evaluating the family. His most recent contact with young Ernie was August 24, 1998. Dr. Krieger usually serves as a consultant for DCF and his evaluations favor the parents in probably ten percent of the cases. This is such a case. CT Page 10165
Dr. Krieger thinks another attempt at reunification is warranted. He indicates that in his opinion both the parents and Ernie have made gains since the last attempt at reunification. Ernie recognizes the biological parents as his parents. At this point in time Ernie wishes to return to them. Ernie was not ambiguous about this in his conversations with the psychologist. Ernie has a relationship with his sister and wishes to be with her. A reunification of Ernie with his parents would not be easy and may even be very difficult. Adequate therapeutic support which is presently in place would have to be maintained. The parents have demonstrated that they have made gains as parents and they are functioning as such. Whether a reunification can be sustained over time can not be forecast.
The court cannot simply decide what is in the best interest of Ernie without first deciding whether legal grounds exist to terminate the parents rights. "No all-encompassing best interests standard vitiates the requirement of compliance with the statutory criteria." In re Michael M., 29 Conn. App. 112, 117-18
(1992); In re Anna B., 50 Conn. App. 298, 302 (1998). In this case the petitioner has alleged that the parents have no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral, and educational needs of the child and to allow further time for the establishment or re-establishment of such parent-child relationship would be detrimental to the best interest of the child. General Statutes § 17a-112 (c)(3)(D). While the foster parents have admirably acted in the parental role, the child still views his parents as his parents and wishes to be reunited with them. It cannot be maintained that there is no on-going parental relationship.
"The question is whether they [the facts] substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or reestablishment." In re Migdalia M.,6 Conn. App. 194, 211, 504 A.2d 532 (1986); In re Juvenile Appeal (84-3,1 Conn. App. 463, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984); In re Juvenile Appeal (Anonymous),177 Conn. 648, 670-671, 420 A.2d 875 (1979). "It is reasonable to read the language of `no on-going parent-child relationship' to CT Page 10166 contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been displaced. In either case, the ultimate question is whether the child has no present memories or feelings for the parent." In re Juvenile Appeal (Anonymous), supra, at 670. See also In re Juvenile Appeal (Anonymous), 181 Conn. 638, 646,436 A.2d 290 (1980).
The petitioner also alleges that the child has previously been adjudicated neglected and the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, such parents could assume a responsible position in the life of the child. General Statutes § 17a-112
(c)(3)(B). The court concludes that the petitioner has failed to prove that the parents have not rehabilitated themselves. Indeed, the affirmative proof of their rehabilitation has been presented by the parents, and the social study itself (Exhibit 2 pp. 14-15) confirms the parents' compliance with every expectation set for them. Having more than met the expectations and having greatly benefitted [benefited] by the counseling and the classes, the petitioner cannot now move the goal line.
ORDER:
The petitioner has failed to prove by clear and convincing evidence either ground alleged. The petition to terminate parental rights is dismissed.
A petition to extend the commitment was filed on July 10, 1998. By order of this court, the extension case was consolidated with the Termination of Parental Rights case. At the conclusion of the evidence this court entered an order to extend the commitment from September 24, 1998 to September 24, 1999. The court finds that continuing efforts to reunify are to be vigorously implemented. A case status conference shall be set by the Court Services Officer to be held within ninety days of this judgment. The date for permanency plan filing for extension or review is June 17, 1999.
By the Court Foley, J. CT Page 10167