IN RE ANNA B. ET AL.*
(AC 17614)

Foti, Landau and Kulawiz, Js.

Argued June 4, 1998—officially released September 8, 1998

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book (1998 Rev.) § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Dale H. King*, for the appellant (respondent mother).

*William G. Bumpus*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

LANDAU, J. This is an appeal by the respondent mother (respondent) from the judgment of the trial court terminating her parental rights with respect to her twin children, Anna and Philip, pursuant to General Statutes § 17a-112 (c) (3).[1] The trial court found that the allegations in the petitions for termination had been proven by clear and convincing evidence, and that it was in the best interest of each child that the parental rights of the respondent be terminated.

On appeal, the respondent claims that the trial court improperly (1) admitted as full exhibits, certain social studies, over hearsay objections, and (2) found (a) that the petitioner had proven by clear and convincing evidence that the respondent mother had failed to achieve such a degree of personal rehabilitation as would

---

[1] General Statutes § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that over an extended period of time . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; [or] (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ."

encourage the belief that within a reasonable time she could assume a responsible position in the lives of the children pursuant to § 17a-112 (c) (3) (B),[2] (b) that the children were denied the care, guidance or control necessary for their physical, educational or emotional well-being pursuant to § 17a-112 (c) (3) (C)[3] and (c) that the respondent mother had been unsuccessful in making any meaningful attempt to adjust her circumstances to facilitate reunification pursuant to General Statutes § 17a-112 (e).[4] We affirm the judgment of the trial court.

The following facts and procedural history are pertinent to our resolution of this appeal. Anna and Philip were adjudicated neglected on April 5, 1991, and placed under the protective supervision of the petitioner for six months.[5] Anna and Philip have two half-brothers, Franklin and Arthur.[6] The trial court found that "the twins' oldest half-brother, Franklin B., Jr., is [at the time of the hearing] 22 years of age. He is mentally retarded and has a documented history of multiple instances of sexually inappropriate behavior with children outside the family, which resulted in his arrest and a referral

---

[2] See footnote 1.

[3] See footnote 1.

[4] General Statutes § 17a-112 (e) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding . . . (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future . . . ."

[5] A half-brother of Anna and Philip, Arthur, was committed to the custody of the petitioner for eighteen months, which was subsequently revoked in October, 1992.

[6] When the action was initiated, the studies indicated that all the children were full siblings. All children assumed that they had a common mother and father. During the termination proceedings, however, it was determined, by DNA testing, that Randy S., the nephew of the respondent husband, was the father of Anna B. and Philip B. The petitioner amended the petition to reflect Randy S. as the father. Randy S. consented to the termination of his parental rights in July, 1997.

to a program for mentally retarded sex offenders in 1992. He was adjudicated not competent to stand trial for an alleged sexual offense as a juvenile." The twins' other half-brother, Arthur, was twenty years of age at the time of the hearing. The trial court found that "[h]is negative, impulsive aggressive behavior has resulted in out of home placements . . . ."

The trial court found that "[in] February, 1993, Anna, age three and one-half, disclosed to various responsible adults, including a social worker at the Yale Sexual Abuse Clinic, that her brother, Franklin B., Jr., age seventeen and one-half, had been sexually abusing her . . . [that] her twin brother, Philip, had been genitally fondled by Franklin and, that the half-brother, Arthur, then age sixteen, had participated in the sexually inappropriate behavior with the twins."

In March, 1993, the petitioner placed the twins in foster care, where they have since remained. The trial court set expectations, which included the removal of Franklin from the respondent's home. The petitioner was willing to consider returning Anna and Philip to their mother if Franklin was placed out of the home. The trial court found, however, that Anna and Philip were not returned because Franklin's removal did not occur. The petitioner filed a petition for the termination of parental rights in April, 1996, which the trial court granted on August 22, 1997.

The trial court stated that "[t]he parents were waiting for the department of mental retardation to find a placement for Franklin. The respondent made no other efforts to place Franklin, then nearly age eighteen, so that they could be reunited with the four year old twins, this despite the fact that, according to a witness for the mother, Franklin was 'able to care for himself.' As between promptly relocating Franklin, even temporarily while waiting for a department of mental retardation

placement, and leaving the twins in foster care, the parents elected to leave the twins in foster care." The trial court further found that "notwithstanding the impressive prior history of Franklin as a sexual exploiter of children, [the respondent] did not believe Anna and did nothing to protect her from further abuse. . . . Anna was victimized by a male family member, victimized by her own mother's disbelief and victimized by a removal from her family, a move compelled by [the respondent's] failure to protect her. More than four years later, [the respondent] remains in denial, has been unimproved by therapy and has profound unresolved parenting limitations."

The children began to fear their mother's outbursts at visitation periods with her. Anna and Philip bonded with their foster family, and neither child wanted to see their mother and her husband again. The trial court found that there is "an extensive history of neglect and poor parenting," and that the respondent's "social history is replete with references to the mother's poor personal hygiene and, more importantly, her volatile and inappropriate behavior." The court further found that the mother "still refuses to acknowledge" the sexual victimization of the twins.

With respect to the statutory grounds for termination of parental rights, the trial court found, by clear and convincing evidence, that the children were previously found to be neglected. It found that the respondent "has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the life of these children"[7] and, further, that "the children have been denied, by reason of an act of commission or omission, the care, guidance or control necessary for

---

[7] See footnote 1.

their physical, educational or emotional well-being, i.e., the mother has failed to protect her children from sexual abuse."[8] The court found that the grounds had existed for more than one year and made the mandatory findings required by § 17a-112 (e).[9] The trial court then concluded that it was in the best interest of the children to terminate the respondent's parental rights.

"Our statutes define the termination of parental rights as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . . It is a most serious and sensitive realm of judicial action. . . . To justify the termination of parental rights in the absence of consent, one or more of the grounds set forth in General Statutes § [17a-112 (c) (3)] must be proven by clear and convincing evidence. . . .

"Section [17a-112 (c) (3)] carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the

---

[8] See footnote 1.

[9] The trial court's findings can be summarized as follows: (1) the petitioner offered parental, psychological and psychiatric services, visitation and foster care that were "adequate, available, accessible and relevant"; (2) the petitioner made reasonable efforts to reunite the family, and the respondent continues to fail to recognize "her need for therapy or acknowledge that sexually inappropriate conduct was occurring to her infant twins"; (3) the respondent did not fully comply with the expectations; (4) the children are bonded to their foster family, and no existing emotional bonds will be broken upon termination of the respondent's rights; (5) the children were eight years old at the time of trial; (6) the respondent has been "unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification"; and (7) "there [had] been nothing to prevent the parents from maintaining a meaningful relationship with the children except the mother's volatile, aggressive and inappropriate behavior during visitation. There was no unreasonable conduct noted on the part of [the department of children and families]. The children's reaction to the visitation robustly indicated that continued visitation was not appropriate. The mother has not seen her children in nearly two years. The children do not wish to see her."

absence of consent. [The commissioner of the department of children and families], in petitioning to terminate those rights, must allege and prove [by clear and convincing evidence] one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. No all-encompassing best interests standard vitiates the requirement of compliance with the statutory criteria." (Citations omitted; internal quotation marks omitted.) *In re Michael M.*, 29 Conn. App. 112, 117–18, 614 A.2d 832 (1992).

I

Initially, the respondent mounts a two-pronged challenge to the trial court's evidentiary ruling permitting the admission into evidence, over objection on hearsay and statutory grounds, of written social studies that had been prepared at prior stages of the commitment and termination proceedings.[10] The petitioner claims that the evidence was properly admitted and that even if the admission was improper, the evidence was admitted through other sources and, thus, was not harmful. Without deciding whether the report or the statements contained within the report fit within any of the exceptions to the hearsay rule or case law; see, e.g., *In re Tabitha P.*, 39 Conn. App. 353, 368, 664 A.2d 1168 (1995); we

---

[10] The respondent argues that the applicable statute for termination of parental rights, General Statutes § 17a-112, does not mention social studies or their admission into evidence. She contends that because termination of parental rights is a statutory cause of action and not one founded in the common law, strict compliance with the statutory criteria is necessary before terminating parental rights. The respondent asserts that Practice Book § 33-5, formerly § 1043.1, allows the mandated social study to be made an exhibit for dispositional purposes, but there is no statutory language or rule of practice that permits these studies to be allowed as evidence for adjudication purposes.

conclude that the admission of the report, even if improper, was harmless.

The respondent claims that the following findings by the trial court were based on its review of the inadmissible studies: (1) that the children's brother, Franklin B., Jr., had a history of sexually inappropriate activity with other children, (2) that the other brother, Arthur, was placed out of the home as a result of aggressive behavior and (3) that the respondent herself came from tragic circumstances with a history of neglect and poor parenting.

All of this contested information was admitted, without objection, through a December 2, 1996 report submitted by David Mantell, a clinical psychologist, who testified at the hearing and was subject to cross-examination. Mantell's report states that the respondent told Mantell that her son, Franklin, had to be removed from the home because of his inapproprite sexual behavior with other children. She stated that his teachers told her this. The respondent stated that her other son, Arthur, was placed out of the home for one and one-half years in 1989 when he was twelve and "giving the school a lot of trouble." The respondent also told Mantell about the tragic circumstances that surrounded her biological family, and that her mother had abandoned her at a young age and that she had left school after the eighth grade. In addition, Mantell testified, without objection, that the various court-related documents revealed poor conditions in the home and poor parenting practices by the respondent.

Because the evidence contained in the challenged social studies was merely cumulative, the admission of those studies as full exhibits was harmless. "It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative

of other validly admitted testimony. . . . Even if we were to presume that the [trial court improperly admitted the report] . . . the [respondent] would need to prove that that [report] more probably than not affected the result." (Citation omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 211, 680 A.2d 1243 (1996).

We conclude that because the social studies were merely cumulative of Mantell's testimony and report, and because the respondent offered no proof that the result would have been different had the studies not been admitted, their admission, even if improper, was harmless.

## II

The respondent next claims that the petitioner failed to provide clear and convincing evidence that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the lives of the children,[11] that the children were denied the care, guidance or control necessary for their physical, educational or emotional well-being,[12] and that the petitioner was unsuccessful in making any meaningful attempt to adjust her circumstances to facilitate reunification.[13] We are unpersuaded.

These claims necessarily involve a challenge to the trial court's findings of facts and their application to its definition of the words of the statute. See *In re Rayna M.*, 13 Conn. App. 23, 36, 534 A.2d 897 (1987). "We cannot retry the facts. *In re Noel M.*, 23 Conn. App. 410, 418, 580 A.2d 996 (1990). On appeal, our function is to determine whether the trial court's conclusion was

---

[11] See footnote 1.

[12] See footnote 1.

[13] See footnote 4.

legally correct and factually supported." *In re Michael M.*, supra, 29 Conn. App. 121.

The trial court's conclusions were legally correct and were factually supported by the record. Anna and Philip recounted the inappropriate sexual behavior of both of their half-brothers, Franklin and Arthur. The trial court recognized that the respondent provided appropriate medical care for the children when they were in her care and that she received therapy. The trial court found, however, that the respondent had not benefited from the therapy and social services. The trial court credited the testimony of Mantell and found that the respondent had poor parenting skills, intellectual limitations and a personality disorder. As a result, the family's situation was "marginal, at best, for the children *without* the sexual abuse concern." (Emphasis added.) The trial court further agreed with Mantell that the case essentially revolved around the pivotal issue of the respondent's failure to accept the sexual victimization of Anna and Philip. The trial court found that the respondent "still refuses to acknowledge this problem." There was ample evidence in the record to support this conclusion. Essentially, the respondent does not claim that there is insufficient evidence in the record for the trial court's findings, but rather that she would prefer that this court rely solely on certain specified portions of evidence and her interpretation thereof. This we will not do.

The judgment is affirmed.

In this opinion the other judges concurred.