IN RE ANTONIO M.*
(AC 18812)

Landau, Mihalakos and Dupont, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 18, 1999—officially released February 8, 2000

*David B. Rozwaski*, with whom, on the brief, was *Sara R. Martin*, for the appellant (respondent).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Eric J. Palladino*, for the minor child.

*Opinion*

DUPONT, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her child, Antonio M. On appeal, the respondent claims that the trial court improperly (1) found that she committed an act of omission or commission that denied the care, guidance and control necessary for the child's welfare pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (C), (2) admitted certain hearsay statements in violation of her constitutional right to due process, (3) refused to draw an adverse inference against the petitioner, the commissioner of children and families (commissioner), for failing to call certain witnesses, (4) concluded that the department of children

and families (department) had made reasonable efforts to reunify the respondent with the child as required by § 17a-112 (c) (1), and (5) waived the one year requirement of General Statutes (Rev. to 1997) § 17a-112 (d). We affirm the judgment of the trial court.

The trial court found the following facts. The respondent is the mother of Lorenzo M., born July 16, 1992, and his younger brother, Antonio M., born April 28, 1993. The father of the children is deceased. On April 17, 1997, the children were placed in foster care after a referral was made to the department by Lorenzo's school, which reported that Lorenzo had a scar under his left eye and that the child stated that his "mommy" did it. An investigation by the department revealed that the respondent had thrown a shovel at her son after telling him that she would do so if he did not obey her. When the child did not obey, she threw the shovel, which hit him in the face and caused a mark that was visible one month after the incident.

On April 21, 1997, the commissioner filed neglect petitions as to both children, alleging that the children were being permitted to live under conditions, circumstances or associations injurious to their well-being. On that same date, the commissioner secured an ex parte order of temporary custody, which was sustained by the trial court after several days of trial. The trial court ordered that the neglect petitions for the two children be consolidated for trial and that all evidence presented at the temporary custody hearing would be evidence at the neglect trial.

After Antonio was placed in foster care, he immediately began to disclose sexual abuse by his mother. On November 5, 1997, the commissioner amended the neglect petition as to Antonio and filed a coterminous petition for the termination of the respondent's parental rights as to Antonio. The termination petition alleged,

pursuant to § 17a-112 (c) (3) (C), that Antonio was being denied, by reason of an act of parental commission or omission, the care, guidance or control necessary for his physical, educational or emotional well-being.

The trial began on June 22, 1998, and lasted two days. The court heard testimony from various witnesses, including a department social worker, a court-appointed psychologist, Lorenzo's primary therapist and Antonio's foster mother. The respondent offered testimony from nine witnesses and testified on her own behalf. Twelve exhibits were introduced into evidence. The court also considered the trial transcripts of the contested order for temporary custody hearing and the exhibits introduced in that trial pursuant to the court's previous ruling.

The trial court first considered the neglect petitions and then considered whether the statutory ground alleged in the termination petition was proven by clear and convincing evidence. The trial court determined by a fair preponderance of the evidence that Antonio and Lorenzo had been neglected and that the respondent permitted the children to live under conditions, circumstances or associations injurious to their well-being. The court ordered Lorenzo committed to the commissioner for one year.[1]

With respect to the termination petition, the trial court found that the commissioner had proven the statutory ground for termination by clear and convincing evidence. The court made the required findings pursuant to § 17a-112 (d) and concluded that termination was in Antonio's best interest. The court rendered judgment terminating the respondent's parental rights with respect to Antonio on July 31, 1998. The respondent

---

[1] The respondent has not appealed from the judgment of the trial court adjudicating both children neglected and committing Lorenzo to the custody of the commissioner.

appeals from the judgment of the trial court terminating her parental rights with respect to Antonio.

"Our statutes define the termination of parental rights as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . . It is a most serious and sensitive realm of judicial action. . . . To justify the termination of parental rights in the absence of consent, one or more of the grounds set forth in General Statutes § [17a-112 (c) (3)] must be proven by clear and convincing evidence. . . .

"Section [17a-112 (c) (3)] carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. [The commissioner], in petitioning to terminate those rights, must allege and prove [by clear and convincing evidence] one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. No all-encompassing best interests standard vitiates the requirement of compliance with the statutory criteria. . . . *In re Michael M.*, 29 Conn. App. 112, 117–18, 614 A.2d 832 (1992)." (Internal quotation marks omitted.) *In re Anna B.*, 50 Conn. App. 298, 303–304, 717 A.2d 289 (1998).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged]

finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly errone-ous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [supra, 29 Conn. App. 121]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991) . . . . We do not examine the record to deter-mine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 222, 435 A.2d 24 (1980)]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Denzel A.*, 53 Conn. App. 827, 831–32, 733 A.2d 298 (1999).

I

The respondent first claims that the trial court improperly found that she had committed an act of omission or commission affecting the welfare of Anto-nio. We disagree.

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educa-tional, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facia evidence of acts of parental

commission or omission sufficient for the termination of parental rights . . . ."

The crux of the respondent's claim is that there was insufficient evidence to support the court's finding that Antonio had suffered serious physical and emotional injury.[2] The respondent claims that there was no basis for the allegations of sexual and physical abuse by her or her boyfriend and no basis for testimony concerning sibling fights. She takes exception to the trial court's alleged failure to credit any of the respondent's witnesses, stating in her brief: "The court apparently does not credit any of [the] respondent's witnesses. Although it is the purview of the trier of fact to determine credibility of witnesses, under the facts of this case, the selective allowance of evidence has violated [the] respondent's rights to due process under the law."

It is well established that in cases tried before courts, trial judges are the sole arbiters of the credibility of witnesses and it is they who determine the weight to be given specific testimony. "On appeal, we do not retry the facts or pass on the credibility of witnesses. . . . It is the quintessential function of the fact finder to reject or accept certain evidence . . . ." (Citations omitted; internal quotation marks omitted.) *In re Carissa K.*, 55 Conn. App. 768, 782, 740 A.2d 896 (1999). In its memorandum of decision, the trial court specifically set forth its reasons for believing or disbelieving certain testimony. As the trier of fact, the trial court may properly accept or reject, in whole or in part, certain testimony offered by a party. Id. Accordingly, we reject the respondent's claim.

[2] The respondent relies on *In re Jessica M.*, 49 Conn. App. 229, 241, 714 A.2d 64 (1998), to support her claim. On September 28, 1999, however, our Supreme Court vacated our decision in that case because the issues in the decision had become moot. See *In re Jessica M.*, 250 Conn. 747, 738 A.2d 1087 (1999). We, therefore, do not rely on *In re Jessica M.*, supra, 49 Conn. App. 229, in deciding this case.

As to the respondent's claim concerning the sufficiency of the evidence, we conclude that the record supports the trial court's finding that Antonio had suffered serious physical and emotional injury. Antonio's foster mother testified that Antonio made a number of disclosures of sexual abuse subsequent to his placement in her care. Specifically, she testified, without objection, that Antonio told her that the respondent "pulled his pee-pee, stuck a needle in it, sucked it and hit it." He also told her that the respondent choked him and held him under water in the bathtub and that the respondent's boyfriend, Louie, swears at him and that he "sucked on his pee-pee" and inserted "a [toy] car up in my butt."

In addition to the disclosures Antonio made to his foster mother, he disclosed sexual and physical abuse by the respondent and Louie to a department social worker, Jennifer Carey. Carey testified that Antonio disclosed to her: "My mommy hit me. My mommy had sucked my pee-pee; Mommy held me under the water. Mommy says bad words. Louie told me to touch him. He told me to do it. He told me to do it." He also stated to her that "Louie is bad because he hits—he hits hard and it hurts."

Antonio also disclosed to Bruce Freedman, the court-appointed psychologist who evaluated the family, that the respondent and Louie sexually and physically abused him. Freedman testified that the disclosures were consistent with the material that Antonio had reported to his foster mother. Freedman testified that both children "together required a high level of skill in a parent to provide them with a well-organized and stimulating environment to allow them to do 'o.k.' in school and in life" and that the respondent did not demonstrate any capacity to meet those needs. He found that the respondent could not set appropriate boundaries and manage the behavior of the children and

that at times, she was trying to intimidate the children in his presence, which he stated was a "dangerous thing." He testified further that the respondent's failure to acknowledge the problems that the children had and her failure to admit any wrongdoing meant that she had only a slim chance of rehabilitation.

The respondent also testified at trial. She stated that she believed that the allegations of sexual and physical abuse were false and that Antonio's foster mother coached him into making them because she wanted to adopt him. She testified that if someone could show her physical proof of such abuse, she would seek counseling for herself and her children.

The trial court found that the respondent's "testimony highlighted the fact that [she] neither accepted responsibility for the many bad events which befell her children while in her care nor had benefited from any of the services offered to her." The court rejected her testimony concerning the incident where she threw a shovel at Lorenzo and concerning her denials of Louie abusing the children. The court found that she "was aware of Lorenzo physically acting out against Antonio" and that she failed to protect Antonio from abuse by his older brother.

The court found that "[w]hile the testimony concerning Antonio's sexual abuse is fraught with issues of confirmation and some issues concerning its reliability, what is without question is that this child had sexually explicit knowledge beyond his years and that he was exposed in his own household to this, if not to actual sexual abuse, although such abuse appears likely." The court concluded that the respondent's "treatment of Antonio and her inability to protect him both from the acts of her boyfriend and from his own brother not only caused Antonio physical injury, but great emotional damage which continues to require treatment at the

present time and is likely to require treatment in the years to come."

"Section 17a-112 authorizes the termination of parental rights where specific acts of parental commission or omission have caused serious physical or emotional injury to a child." *In re Lauren R.*, 49 Conn. App. 763, 773, 715 A.2d 822 (1998); *In re Felicia D.*, 35 Conn. App. 490, 501–502, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). In *In re Felicia D.*, the trial court found that the respondent had committed an act of parental commission or omission by continually exposing her child to the risk of serious physical injury by associating with dangerous men, even though she was not the person who actually had inflicted the serious physical injury. *In re Felicia D.*, supra, 501–502.

Here, although the court did not conclusively state that Antonio was the victim of sexual abuse, it concluded that the respondent's failure to protect Antonio from the acts of her boyfriend and his own brother caused Antonio physical and emotional injury. To the extent that the respondent claims that she is uncertain as to what specific injury the court refers, she should have filed a motion for articulation and, having failed to do so, cannot now be heard to complain. See *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 128, 728 A.2d 1140 (1999). We conclude that the trial court's finding that grounds existed under § 17a-112 to terminate the respondent's parental rights was not clearly erroneous.

## II

The respondent next claims that the trial court improperly admitted certain hearsay statements and failed to draw an adverse inference against the commissioner for failure to call certain witnesses to testify, which deprived her of her constitutional right to due process. Specifically, she claims it was improper to

admit the hearsay statements Antonio made to his foster mother, to the court-appointed psychologist and to the social worker concerning the alleged sexual and physical abuse by the respondent and her boyfriend. The respondent did not object to the admission of this evidence at trial and now seeks review of her unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] She states in her brief that the alleged error is evidentiary, but she nevertheless claims that the alleged impropriety is constitutional because it interferes with her fundamental right to a familial relationship.

We conclude that the respondent has failed to meet the second prong of *Golding* because her claim is not one of constitutional magnitude. We recognize that "[t]he right of a parent to raise his or her children has been recognized as a basic constitutional right"; *In re Alexander V.*, 25 Conn. App. 741, 743, 596 A.2d 934 (1991), aff'd, 223 Conn. 557, 613 A.2d 780 (1992); however, "[u]npreserved hearsay claims do not automatically invoke constitutional rights . . . ." *State* v. *Grenier*, 55 Conn. App. 630, 646, 739 A.2d 751 (1999). The appellate courts of this state have consistently held that "admission of statements that are either irrelevant or impermissible hearsay is not a constitutional error." *State* v. *Booth*, 250 Conn. 611, 662, 737 A.2d 404 (1999); *State* v. *McIntyre*, 242 Conn. 318, 329, 699 A.2d 911

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

(1997); see *State* v. *Jones*, 44 Conn. App. 476, 487, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997) (evidentiary claim not of constitutional magnitude and therefore not subject to *Golding* review). The respondent " 'has put a constitutional tag on a nonconstitutional evidentiary [claim].' " *State* v. *Grenier*, supra, 647. Because the respondent has failed to allege a claim of constitutional magnitude, she cannot prevail under *Golding*.

The respondent also claims that the trial court improperly failed to draw an adverse inference against the commissioner for failing to call certain witnesses to testify. The respondent offered one sentence and no analysis in her appellate brief on this issue. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. *State* v. *Sewell*, 38 Conn. App. 20, 29, 658 A.2d 598, cert. denied, 234 Conn. 918, 661 A.2d 98 (1995); *State* v. *Gaines*, 36 Conn. App. 454, 460, 651 A.2d 1297 (1994). Analysis, rather than mere 'abstract assertion,' is required in order to avoid abandoning an issue by failure to brief the issue properly. *State* v. *Cain*, 25 Conn. App. 503, 524, 596 A.2d 449 (1991) [aff'd, 223 Conn. 731, 613 A.2d 804 (1992)]." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). We conclude that the respondent has abandoned the issue.[4]

---

[4] The case of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), which held that the failure of a party to produce a witness who naturally would have been produced permits the inference that the testimony of the witness would have been unfavorable, was overruled in criminal cases in *State* v. *Malave*, 250 Conn. 722, 730, 737 A.2d 442 (1999), and rendered nugatory in civil cases by the 1998 session of the legislature. See Public Acts 1998, No. 98-50, codified as General Statutes § 52-216c.

## III

The respondent next claims that the trial court improperly concluded that the department had made reasonable efforts to reunify Antonio with her. We do not agree.

"Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the [child with the] family. The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . [*In re Tabitha T.*, 51 Conn. App. 595, 600, 722 A.2d 1232 (1999)]. . . . *In re Antony B.*, 54 Conn. App. 463, 474–75, 735 A.2d 893 (1999)." (Internal quotation marks omitted.) *In re Savanna M.*, 55 Conn. App. 807, 812–13, 740 A.2d 484 (1999).

The respondent claims that her right to due process was violated because the department failed to give adequate notice of what she needed to do to be reunited with Antonio. She claims to have met all of the expectations set by the court and complied with all of the department's requests. The trial court, however, found to the contrary. Here, the court found that the respondent did not fully meet those expectations. The court stated in its memorandum of decision that the depart-

ment "has offered services to [the respondent] to assist her in securing the return of her children and rehabilitating herself as a parent. Many of those services she has rejected."

"[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 372, 730 A.2d 106 (1999). In the present case, the trial court found by clear and convincing evidence that the department "made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. Without participation [by the respondent] in the services offered . . . without her acceptance of responsibility for the abuse which took place in the home and her acknowledgment of her own need to improve as a parent, further services would have been of no benefit toward any reunification." We are not persuaded, considering the circumstances of this case, that the trial court's conclusion that the department made reasonable efforts to reunite the family was clearly erroneous.

## IV

The respondent's final claim is that the trial court improperly waived the one year requirement of General Statutes (Rev. to 1997) § 17a-112 (d). We disagree.

At the time the petition was filed in the present case,[5] General Statutes (Rev. to 1997) § 17a-112 (c) authorized the court to grant a petition to terminate parental rights

[5] Section 17a-112 was amended by Public Acts 1998, No. 98-241, § 8, effective July 1, 1998. Section 17a-112, as amended, no longer requires that the grounds for termination have existed for one year prior to the termination of parental rights. We, however, limit our review of this case to § 17a-112 as it existed as of the date of the petition. See *In re Migdalia M.*, 6 Conn. App. 194, 200–201, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986); see also *In re Eden F.*, 250 Conn. 674, 687 n.16, 741 A.2d 873 (1999).

"if it finds by clear and convincing evidence . . . (3) that over an extended period of time, which except as provided in subsection (d) of this section shall not be less than one year . . . (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. . . ." General Statutes (Rev. to 1997) § 17a-112 (d) provided in relevant part: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds: (1) From the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child. . . ." " 'Because the statute entrusts the decision concerning waiver to the discretion of the trial court, the only issue on appeal is whether the trial court abused its discretion.' *In re Baby Girl B.*, 224 Conn. 263, 301, 618 A.2d 1 (1992)." *In re Romance M.*, 30 Conn. App. 839, 856–57, 622 A.2d 1047 (1993), appeal dismissed, 229 Conn. 345, 641 A.2d 378 (1994).

Here, the trial court concluded from the totality of the circumstances that a waiver of the statutory one year period was necessary to promote the best interest of the child. Specifically, the court concluded: "The waiver is appropriate in this case where the biological mother has not benefited from the services offered to her and where her own son does not speak of her or wish to see her. She has not taken the steps necessary to learn how to provide a safe home for her son and is unlikely to do so in the reasonably foreseeable future. Waiting for the time required by the general provisions of the statute to pass until the one year has elapsed would serve no purpose and is not in the best interests of Antonio, who deserves permanency in his life." We are unable to conclude that the trial court abused its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.