******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE MIYUKI M.*
## (AC 44186)

Bright, C. J., and Moll and DiPentima, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court terminating her parental rights as to her minor child, M, and denying her motion to transfer guardianship of M to M's maternal grandmother. The court conducted a consolidated trial on the termination of parental rights petition and motion to transfer guardianship, and properly canvassed the respondent pursuant to *In re Yasiel R.* (317 Conn. 773), advising her of the purpose and consequences of the termination of parental rights. The petitioner, the Commissioner of Children and Families, submitted a stipulation of facts, signed by the respondent. The respondent's attorney agreed that there was no need for the court to conduct a canvass of the respondent before accepting the stipulation of facts. The court accepted the stipulation. The court subsequently declared a mistrial after the respondent's attorney withdrew from the case. Following the mistrial, the case proceeded to a new trial, where the court again canvassed the respondent at the start of trial pursuant to *In re Yasiel R.* The court then accepted into evidence exhibit P, which consisted of the stipulation of facts from the first trial. The respondent's attorney did not object to the exhibit. After considering all the evidence, the court determined that, pursuant to statute (§ 17a-112 (j) (3) (B) (i)), the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in M's life. The court also found that it was not in M's best interest to transfer guardianship to her maternal grandmother, as there was insufficient evidence that she was a suitable guardian. On appeal, the mother claimed, inter alia, that the trial court violated her right to due process when it failed to canvass her separately regarding the stipulation of facts, which she contends was essentially the equivalent of a consent to termination of her parental rights, that this failure constituted plain error, and required the exercise of this court's supervisory authority. *Held:*

1. The respondent mother could not prevail on her unpreserved claim that her right to due process was violated when the trial court failed to canvass her before accepting into evidence exhibit P: although the record of her claim was adequate for review under *State* v. *Golding* (213 Conn. 233), the claim was not of constitutional magnitude, it was an evidentiary claim that involved the court's discretion, and the fact that the case involved the termination of parental rights did not transform an evidentiary matter into a constitutional matter; moreover, even if the claim were of constitutional magnitude, the claim would still fail because the respondent could not establish that a constitutional violation existed and deprived her of a fair trial, as the court thoroughly canvassed the respondent at the start of the trial in accordance with the requirements set forth in *In re Yasiel R.*, and it was not required to conduct a separate canvass because her attorney made a tactical decision not to contest the exhibits offered at trial by the petitioner, and the respondent had the opportunity to dispute the facts contained in exhibit P and to explain why she entered into the stipulation; furthermore, this court declined to employ the plain error doctrine or to exercise its supervisory authority because neither action was warranted under the facts of this case.

2. The trial court did not abuse its discretion in concluding that M's maternal grandmother was not a suitable and worthy guardian for M: the court found that there was little record evidence to enable it to conclude that the grandmother was a suitable and worthy guardian for M and that transfer of guardianship was in M's best interest; a review of the evidence revealed that the grandmother had moved several times, she lacked insight into the respondent's mental health and substance abuse problems, she was inconsistent in her desire to be a resource for M, she refused the Department of Children and Families access to her home

on at least one occasion, and M was bonded to her foster family; accordingly, on the basis of the record before this court, it would not second-guess the trial court's determinations.

Argued January 4—officially released February 23, 2021**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Litchfield, Juvenile Matters, where the matter was tried to the court, *Hon. Joseph W. Doherty*, judge trial referee; thereafter, the court denied the respondent mother's motion to transfer guardianship; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel for the appellant (respondent mother).

*Sara Nadim*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Rebecca Mayo Goodrich*, for the minor child.

*Opinion*

BRIGHT, C. J. The respondent mother, Shayna C., appeals from the judgment of the trial court terminating her parental rights as to her child, Miyuki M.[1] On appeal, the respondent claims that (1) the court's failure to canvass her regarding her written stipulation of facts violates her right to due process under the fourteenth amendment to the United States constitution, constitutes plain error, and requires the exercise of our supervisory authority, and (2) the court erred in denying her motion to transfer guardianship of her child to the child's maternal grandmother. We affirm the judgment of the trial court.

Initially, we set forth the following procedural history. Following the birth of the child, the Department of Children and Families (department) became involved with the respondent and the child's father, which resulted in the removal of the child from the family home. Approximately one year later, the child was reunified with the respondent. Less than two years later, on March 10, 2017, the petitioner, the Commissioner of Children and Families, invoked a ninety-six hour hold on the child due to concerns about the mental health and substance abuse issues of the respondent and the child's father. On March 13, 2017, the petitioner filed a neglect petition, and the court granted the petitioner's ex parte motion for an order of temporary custody. On July 19, 2017, the court adjudicated the child neglected following the respondent's plea of nolo contendere to allegations in the neglect petition. On July 26, 2017, the court committed the child to the care and custody of the petitioner. On December 29, 2017, the petitioner filed a motion to review permanency plan, and, on February 23, 2018, the court held a hearing, after which it approved the permanency plan of termination of parental rights and adoption, and it added a concurrent plan of transfer of guardianship to either the paternal grandparents or the maternal grandmother. The court also made a finding of no further reasonable efforts.

On April 11, 2018, the petitioner filed a termination of parental rights petition, and, on August 21, 2018, the respondent filed a motion to transfer guardianship to the child's maternal grandmother. On December 17, 2018, the petitioner filed a permanency plan of termination of parental rights and adoption. On January 4, 2019, the respondent objected to the permanency plan, but she agreed that reunification was not an appropriate plan for the child and that the department should not be obligated to make any reasonable efforts to achieve reunification. On February 25, 2019, the court conducted a consolidated trial on the termination of parental rights petition and the respondent's motion to transfer guardianship to the child's maternal grandmother, at the start of which the court properly canvassed the respondent pursuant to *In re Yasiel R.*, 317 Conn. 773,

794, 120 A.3d 1188 (2015) (*Yasiel R.*). On February 26, 2019, the petitioner presented the court with a stipulation of facts, signed by the respondent, and the respondent's attorney agreed that there was no need for the court to conduct a canvass of the respondent before accepting the stipulation of facts. The court then accepted the stipulation as a "filing." On April 4, 2019, the respondent's attorney filed a motion to withdraw from the case. On April 15, 2019, the court granted that motion, and, on April 22, 2019, the court declared a mistrial.

Following the mistrial, the case proceeded to a new consolidated trial, which was held over the course of eight days between July 29 and November 12, 2019. The following facts, as found by the trial court, and additional procedural history inform our review of the respondent's claims on appeal. At the start of the new trial, the court, pursuant to *Yasiel R.*, again canvassed the respondent, who was represented by new counsel, provided her with the advisement required by Practice Book § 32a-1, and inquired as to whether she understood her rights as described in the canvass and the advisement, to which she responded in the affirmative.[2] Court was recessed shortly thereafter at the request of one of the attorneys. The next day, the respondent and the petitioner indicated that they had "an agreement on exhibits" and that "there [was] no objection" to the exhibits being entered into evidence. The court stated that exhibits "A through Q are going to be recognized as full exhibits, as each of them are presented during trial." Exhibit P was the stipulation that the respondent had signed in February, 2019, which had been accepted as a "filing" in the previous trial.

On October 15, 2019, during the respondent's testimony before the trial court, she agreed with many of the stipulated facts set forth in exhibit P, but she disagreed with others. She also explained why she signed the stipulation even though she thought some of the facts contained therein were incorrect. The court also heard testimony from department social workers, aides, the child's maternal grandmother, the maternal grandmother's therapist, and a friend of the maternal grandmother.

After considering all of the evidence presented at trial, the court issued a memorandum of decision on March 9, 2020, in which it found that the respondent had "made a number of attempts to overcome her substance abuse and to acquire the necessary parenting skills, but [that she] has not been successful with either." The court further found that "there [was] insufficient evidence concerning [the] maternal grandmother to permit the court to find that she is 'suitable and worthy' . . . ." Additionally, the court found that the child was bonded with her foster family, having lived with them for much of her life, and that a transfer of guardianship to the

maternal grandmother would not be in the child's best interests. Accordingly, the court granted the petitioner's termination of parental rights petition, and it denied the respondent's motion to transfer guardianship to the child's maternal grandmother. This appeal followed. Additional facts will be set forth as necessary to address the respondent's claims.

I

The respondent first claims that the court's failure to canvass her before accepting into evidence exhibit P, which was the written stipulation of facts that had been filed during the previous trial, violated her right to due process of law.[3] The respondent acknowledges that this issue was not preserved because she did not object to exhibit P during her trial, and, therefore, she requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The respondent further argues that the court's acceptance of exhibit P without canvassing her separately constitutes plain error and requires the exercise of our supervisory authority. We conclude that this claim is not of constitutional magnitude and that, even if we were to assume that it meets that threshold, the court, nonetheless, acted properly in admitting into evidence exhibit P without, sua sponte, conducting another canvass of the respondent. Furthermore, we decline to employ the plain error doctrine[4] or our supervisory authority[5] because neither is warranted under the facts of this case. See *State* v. *Lavigne*, 307 Conn. 592, 598 n.5, 57 A.3d 332 (2012) (declining to review defendant's claims under "inherent supervisory authority and the plain error doctrine . . . because our supervisory powers and the plain error doctrine are reserved for extraordinary circumstances that are not implicated by the present case").

"Under *Golding*, a [respondent] can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail. . . . *State* v. *Golding*, supra, 213 Conn. 239–40; see [*Yasiel R.*, supra, 317 Conn. 781] (modifying third prong of *Golding* by eliminating word clearly)." (Internal quotation marks omitted.) *In re Zoey H.*, 183 Conn. App. 327, 335, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 425 (2018).

The respondent argues that her claim is reviewable under *Golding* because the record is adequate and the claim involves her fundamental right to raise her child.

The petitioner concedes that the respondent's claim satisfies both the first and second *Golding* prongs but, argues, nonetheless, that the trial court's acceptance of "factual stipulations . . . does not implicate an individual's right to due process . . . ." We conclude that the record is adequate for review, but we are not persuaded that the respondent's claim is of constitutional magnitude. See *In re Devon W.*, 124 Conn. App. 631, 647, 6 A.3d 100 (2010) ("[p]utting a constitutional tag on a nonconstitutional claim will [not] change its essential nature" (internal quotation marks omitted)).

In the first trial, the respondent agreed to a stipulation of facts, which then was filed in the case. After the court declared a mistrial and a new trial was underway, the petitioner, without objection from the respondent, offered into evidence a series of exhibits, one of which was exhibit P, the stipulation of facts. The respondent's attorney specifically stated that there was no objection to the exhibits offered. The respondent's claim on appeal, that the court, sua sponte, had to conduct a separate canvass of her before it could admit into evidence a trial exhibit to which the respondent offered no objection, appears to be nothing more than an unpreserved evidentiary claim involving the court's discretion to accept evidence. See id.; see also *In re Antonio M.*, 56 Conn. App. 534, 544–45, 744 A.2d 915 (2000) (although right to raise one's children is fundamental, claim concerning improper admission of hearsay evidence is not constitutional in nature but, rather, is evidentiary). The fact that this is a termination of parental rights case does not transform an evidentiary matter into a constitutional matter. See *In re Antonio M.*, supra, 544–45.

Nevertheless, even if we assume, as does the petitioner, that the respondent has met the second prong of *Golding*, she cannot sustain her burden under *Golding*'s third prong, i.e., that a constitutional violation exists and deprived her of a fair trial. See *In re Shane P.*, 58 Conn. App. 244, 253–54, 754 A.2d 169 (2000) (even assuming record is adequate and claim is of constitutional magnitude, respondent's claim fails under *Golding*'s third prong).

In this case, the court thoroughly canvassed the respondent in accordance with the requirements set forth in *Yasiel R.*, supra, 317 Conn. 773, and she does not contend otherwise. Rather, she argues that the court violated her right to due process by failing, sua sponte, to conduct a separate canvass before it admitted exhibit P into evidence, despite the fact that her attorney stated that there was no objection to the admission of any of the exhibits. She contends that exhibit P essentially is the equivalent of a consent to termination of her parental rights and that it should be treated as such, and that a separate canvass should be required. Guided by *Yasiel R.*, we disagree.

In *Yasiel R.*, our Supreme Court, after considering the factors set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"); *Yasiel R.*, supra, 317 Conn. 782–87; held that "due process *does not require* that a trial court canvass a respondent who is represented by counsel when the respondent does not testify or present witnesses and the respondent's attorney *does not object to exhibits* or cross-examine witnesses." (Emphasis added.) Id., 787–88.

Somewhat similar to the present case, the respondent in *Yasiel R.* had decided not to contest, inter alia, the exhibits presented to the court by the petitioner. Id., 778. Our Supreme Court, in the exercise of its supervisory authority, although concluding that the due process clause *does not require* a canvass of the respondent in a termination proceeding, instructed that "public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents immediately before a parental rights termination trial so as to ensure that the parents understand the trial process, their rights during the trial and the potential consequences." Id., 794. The court also explained that "[t]he canvass we require . . . [must] be given to all parents involved in a termination trial, *not just those whose attorneys choose not to contest evidence*. Indeed, we require that the canvass be performed at the very start of the termination trial, before a decision as to whether to challenge evidence has been communicated to the court. In so doing, the canvass we require does not single out those parents whose attorneys have made a tactical decision not to contest the evidence presented. As a result, the canvass we require does not interfere with the attorney-client relationship but serves to inform and protect *all* parents." (Emphasis altered.) Id.

In the present case, the trial court properly canvassed the respondent at the start of the termination trial in accordance with *Yasiel R.*, including explaining to the respondent that "[i]f you do not present any witnesses on your own behalf . . . do not object to the testimony or exhibits, or do not cross-examine witness[es] at this trial, the trial judge will decide the case based on the evidence that was presented at trial." As in *Yasiel R.*, the court in the present case was not required to give a separate canvass before the respondent's attorney made a tactical decision not to contest the exhibits offered by the petitioner.[6]

## II

The respondent next claims that the court erred in denying her motion to transfer guardianship of her child to the child's maternal grandmother (grandmother). She argues that the court's finding that the grandmother was not "suitable and worthy" constitutes "an abuse of discretion." We are not persuaded.

"The adjudication of a motion to transfer guardianship pursuant to General Statutes § 46b-129 (j) (2) requires a two step analysis. [T]he court must first determine whether it would be in the best interest[s] of the child for guardianship to be transferred from the petitioner to the proposed guardian. . . . [Second] [t]he court must then find that the third party is a suitable and worthy guardian. . . . This principle is echoed in Practice Book § 35a-12A (d), which provides that the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child." (Footnote omitted; internal quotation marks omitted.) *In re Leo L.*, 191 Conn. App. 134, 139–40, 214 A.3d 430 (2019).

"To determine whether a custodial placement is in the best interest[s] of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest[s] of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evidence." (Internal quotation marks omitted.) Id., 140–41.

The respondent argues that there was substantial evidence in the record to allow the court to find that the grandmother was suitable and worthy. She argues that she "introduced [twenty-three] exhibits into evidence . . . the majority [of which] constituted evidence of [the grandmother's] suitability for guardian-

ship of [the child]."[7] She further argues that several witnesses testified to the grandmother's suitability, and that the grandmother, herself, provided testimony.[8] She contends that the court "simply failed to consider any of the evidence in its memorandum of decision." Finally, the respondent contends that the court's conclusion that transfer of guardianship to the grandmother was not in the child's best interests was an abuse of discretion. We are not persuaded.

In the present case, the court found that there was little record evidence to enable it to conclude that the grandmother was a suitable and worthy guardian for the child. A review of the evidence in the record reveals that the grandmother had moved four times in the previous six years, that her current apartment was the first one for which she had been financially responsible, that she lacked insight into the respondent's mental health and substance abuse problems, that she was inconsistent in her desire to be a resource for the child, that she had refused the department access to her home on at least one occasion, and that the department had concerns about her coaching the child and trying to make the child feel sad because she misses her. Although there was testimony from witnesses who indicated that the grandmother was suitable and worthy, it is the function of the trial court to determine the reliability and weight of the evidence presented. See *In re Leo L.*, supra, 191 Conn. App. 142 ("[t]his court does not make credibility determinations, and it is the trial court's role to weigh the evidence presented and determine relative credibility when it sits as a fact finder").

The court, in this case, heard and viewed the evidence presented, assessed its credibility and reliability, weighed it, and determined that it was insufficient to prove that the grandmother was suitable and worthy. The court also found that the child was bonded to her foster family, including her foster parents and her three foster siblings, that she had "adjusted very well in her . . . foster placement, and [that] the foster parents [were] providing the day-to-day physical, emotional, moral and education[al] support that she needs." See *In re Leo L.*, supra, 191 Conn. App. 142 ("a trial court may rely on the relationship between a child and the child's foster parents to determine whether a different placement would be in the child's best interest[s]" (internal quotation marks omitted)), quoting *In re Athena C.*, 181 Conn. App. 803, 821, 186 A.3d 1198, cert. denied, 329 Conn. 911, 186 A.3d 14 (2018). The court concluded that the evidence was insufficient to prove that the grandmother was a suitable and worthy guardian for the child. It also concluded that a transfer of guardianship to the grandmother was not in the child's best interests. On the basis of the record before us, we will not second-guess the court's determinations.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 23, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The child's father consented to the termination of his parental rights. Any reference to the respondent herein is to the mother.

[2] Specifically, the court explained to the respondent in relevant part: "Now, in cases concerning termination of parental rights, after a recent decision in a case of . . . *Yasiel R.*, our Supreme Court directed the trial court to read into the record and advise mother and father, on the record, of the purpose and the consequences of a termination of parental rights. So I'm not reading this to you personally, this is done in every case in which a termination trial is about to begin before the evidence and testimony commences. And it's an advisement that is only used infrequently, so I'm [going to] read it to you . . . so I don't leave anything out.

"At this time the court advises the parents that the petitioner . . . has previously filed with this court, a legal document called a termination of parental rights petition in which [the petitioner] seeks to have this court permanently end the legal parent/child relationship between you and your child, in this case, Miyuki.

"Because [the petitioner] is the one who filed the petition and the one asking the court to permanently sever your legal relationship with your child it's up to [the petitioner] to prove their case, at a termination trial, by clear and convincing evidence. If [the petitioner] prevailed or won at trial and the court grants the termination of parental rights you will have no legal rights, no authority and no responsibility for this child. You [will] no longer have any right to make any decisions, of any kind, regarding this child, you [will] not be entitled to any state or federal benefits or entitlements on behalf of this child.

"A child is free to be adopted only upon the termination of any and all parental rights.

"A termination of parental rights trial gives you, as the parent, an opportunity to defend against this petition. At a . . . trial anything you say or have said could be used against you. You've got the right to remain silent and say nothing and do nothing that helps [the petitioner] to prove its case. You also have the right, if you so choose, to tell the judge your side of the story, that is, testifying on your own behalf. You have the right to confront and cross-examine witnesses and/or evidence and you've got the right to attempt to have admitted, for the trial judge to consider, testimony and evidence that you think is important in this case.

"If any or all of the other parties to the case object to your proposed witnesses or evidence the trial judge will, as the judge does in all cases, decide whether something should be admitted and what weight to give that admitted evidence.

"As is your right, you have an attorney representing you throughout this termination of parental rights proceeding. As part of your rights it's up to your lawyer to inform the court when an objectionable question is asked and to tell the court when . . . at an appropriate time your position regarding the evidence, procedure and legal rights and rulings throughout the trial.

"As I just stated, your decision to testify or not testify, at this trial, is yours to make. I must tell you, if you decide not to testify and whether a fully contested, partially contested or uncontested termination of parental rights trial the judge may draw an adverse inference, meaning that the trial judge could conclude that you did not testify because what you would have said would not have been helpful to your side of the case. Such an adverse ruling may help the petition, that is, [the petitioner] prevail at trial.

"If you do not present any witnesses on your own behalf or do not object to the testimony or exhibits or do not cross-examine the witness, at this trial, the trial judge will decide the case based on the evidence that was presented at trial."

The court then asked the respondent and the child's father if they had any questions, to which they each responded "No." The court then followed up with, "[a]nd you understand your rights and everything that I've just said?" The respondent and the child's father each said "I do."

[3] In her argument, the respondent focuses primarily on the court's action in accepting the filing of the stipulation in the first trial. That trial, however,

ended in a mistrial and is not before us in this appeal.

[4] "The plain error doctrine is a rule of reversibility reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 700 n.9, 6 A.3d 52 (2010).

[5] "[O]ur supervisory authority . . . is not a form of free-floating justice, untethered to legal principle . . . [and] [o]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 701 n.11, 6 A.3d 52 (2010). Under the facts of the present case, we decline to invoke this extraordinary power. See id.

[6] The respondent's due process claim is further undermined by the fact that she had the opportunity to dispute the facts contained in exhibit P and to explain why she entered into the stipulation at the first trial. The petitioner did not object to such testimony on the basis that the stipulation constituted a judicial admission and the court, in its memorandum of decision, gave no indication that it treated it as such. Consequently, the respondent was able to challenge her statements in exhibit P in the same way as she was able to challenge any other evidence presented by the petitioner. We fail to see how this does not comport with due process.

[7] Although the respondent's attorney argues that many or most of the respondent's exhibits established that the maternal grandmother was suitable and worthy, she neither included copies in her appendix of the relevant portions of any specific exhibits, nor cited to the relevant portions of any specific exhibits in support of her claim. See Practice Book § 67-8 (b) (2).

[8] Despite her argument that several witnesses testified to the suitability of the grandmother, the respondent's attorney neither included in her appendix the relevant portions of any particular testimony concerning the suitability of the grandmother, nor cited to the relevant portions of any specific witness' testimony. See Practice Book § 67-8 (b) (2).