## IN RE AMANDA A. ET AL.*
## (AC 19810)

Foti, Landau and Pellegrino, Js.

Argued March 27—officially released June 27, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Raymond J. Rigat,* for the appellant (respondent mother).

*Carmel A. Motherway,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent mother[1] appeals from the judgments of the trial court terminating her parental rights with respect to her three minor children. On appeal, the respondent claims that (1) the court improperly found that the department of children and families (department) made reasonable efforts at reunification, (2) she was denied her constitutional rights in having her parental rights terminated solely because of her mental illness, (3) the court failed to order a competency evaluation and to appoint a guardian ad litem and (4) her attorney rendered ineffective assistance by not moving for a competency evaluation and the appointment of a guardian ad litem. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. On December 19, 1996, the children were adjudicated uncared for and committed to the care and custody of the department. On December 9, 1997, the commissioner of children and families (commissioner) filed petitions for the termination of parental rights of the respondent with respect to her three children.

On the basis of the testimony and evidence offered at trial, as interpreted in light of the children's prior

---

[1] Only the respondent mother has appealed, and we refer to her in this opinion as the respondent.

record with the department, and with judicial notice taken of all prior court actions, the court made certain findings of fact. The court found that the respondent "has had a history of mental health problems of varying severity since her adolescence, which have been compounded by her use of cocaine. She is herself a [person] who was placed in foster care when she was six, after her mother died. For her, the child protection system failed in its promise to protect and nurture children, as she was abused and neglected in the foster home in which she was placed. Her mental health and other adjustment difficulties led her to a brief placement with relatives, which was disrupted in part due to her acting-out, and then to residential placement until she reached the age of majority. It is a background of disruption and gross parental failures, which ill prepared and equipped her for parenting when she became a mother herself. Indeed, some of the professionals evaluating her see the intergenerational difficulties as having significant impact on [the respondent's] life and the lives of her three children."

Furthermore, the court found that the respondent has been uncommunicative and hostile toward the department because of its involvement in her life, and that there is not a great amount of information about the circumstances of her life during the time when her children were conceived. From the outset, the respondent has had ongoing mental health and drug use problems that led to the placement of the children with the department on a number of occasions. Because it appeared that the respondent had the capacity to improve her parenting and to provide for her three children, they were returned to her after each removal under the condition that she would parent them. Unfortunately, the respondent was not able to do so adequately. Consequently, the children were last removed

from the respondent on January 30, 1996, and have been in foster care since that time.

During the trial proceedings, the commissioner alleged that the respondent has failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, taking into consideration the age and needs of her children, she could assume a responsible position in their lives.[2] At trial, the respondent filed a motion to dismiss contending that the department failed to comply with a May 19, 1998 court order permitting the respondent to have therapeutic visitation with her children.[3] After the trial concluded on January 15, 1999, the court granted the termination petitions as to the respondent, finding that the reunification efforts "continued well past beyond the time it was excruciatingly clear that [the respondent] could not and did not benefit from such efforts." The court denied the respondent's motion for a dismissal or a continuance. This appeal followed. Additional facts will be set forth where necessary.

I

The respondent first claims that the court improperly found that the commissioner proved by clear and convincing evidence that reasonable efforts at reunification had been made. We do not agree.

"It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [General Statutes] § 17a-112 (c) (1). See *In re Eden F.*, 250 Conn. 674, 695 n.23, 741 A.2d 873 (1999). We also

---

[2] Other grounds were alleged but were abandoned.

[3] The motion, alternatively, requested that the matter be continued to permit future visitation and that the department be required to fulfill its obligation pursuant to the court's order. The motion to dismiss was consolidated with the termination petitions for trial.

note that '[t]he statutory criteria must be strictly complied with before termination can be accomplished. *In re Juvenile Appeal (Docket No. 9489)*, 183 Conn. 11, 13, 438 A.2d 801 (1981); *In re Juvenile Appeal (Anonymous)*, [177 Conn. 648, 672, 420 A.2d 875 (1979)].' *In re Michael M.*, 29 Conn. App. 112, 119, 614 A.2d 832 (1992)." *In re Savanna M.*, 55 Conn. App. 807, 811, 740 A.2d 484 (1999).

On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported; every reasonable presumption is made in favor of the trial court's ruling and we will disturb the findings of the trial court in either the adjudication or disposition phases only if they are clearly erroneous. *In re Tabitha T.*, 51 Conn. App. 595, 599, 722 A.2d 1232 (1999).

"Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the [children with the] family. The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Antonio M.*, 56 Conn. App. 534, 546, 744 A.2d 915 (2000).

The respondent claims that it "was cruel and outrageous to allow her the custody of her children through-

out long periods of this time [1990–99], whereupon her bond with the children was nurtured and encouraged, only to have her children taken away at intervals where incomplete and nonexistent services were offered her for purposes of rehabilitation." She further alleges that because she has had "psychotic episodes with hallucinations," it is unfair to place any burden on her to seek mental health treatment without "being guided to it by the appropriate mental health agencies which exist in our state for this very purpose."[4]

During the five day trial, the court heard testimony from the department's social workers, two psychologist evaluators, the foster parents of the children, the director of a substance abuse treatment agency who had completed a drug evaluation of the respondent, a community parent educator, a detective from the New Haven police department, the therapists who conducted therapeutic supervised visits with the respondent and the three children in two separate programs, and from the respondent. The court also had many exhibits, including transcripts of another psychologist's evaluation and the respondent's mental health therapist.

The court's memorandum of decision is replete with findings, supported in the record, concerning the department's efforts at reunification. There existed various in-home reunification services in place in 1995 when the children were returned to the respondent,[5] including

---

[4] The respondent argues for the first time on appeal that none of the services provided by the department were sufficient in that she has an underlying psychiatric illness. She claims review for this and all other "referenced constitutional claims" not raised directly in the trial court under *State v. Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). She also claims that this issue goes to the heart of her ineffective assistance of counsel claim.

[5] The record shows that there was a complete reunification team with people in the respondent's home two or three times a week, providing assistance twenty-four hours a day for housing, transportation, funding, clothing and food, in addition to the mental health services that were provided to the respondent.

a parent educator, services for the respondent from Milford Mental Health, and Birth to Three services. The department, following the children's removal in 1996, attempted to assist the respondent in building a therapeutic support team to deal with her ongoing mental health and drug problems.[6] The respondent also was provided with supervised therapeutic visitation with the children at Southern Connecticut State University Family Counseling; she absented herself from these visits for approximately ten months in 1997 and 1998.

We are not persuaded, considering the circumstances of this case, that the court's conclusion that the department made reasonable efforts to reunite the family was clearly erroneous. There was clear and convincing evidence that the department did all it reasonably could do to reunify the respondent with her children and that it was the conduct of the respondent that led to the failure of those efforts.

## II

The respondent next alleges that she was deprived of equal protection under the law[7] because the department failed to provide and coordinate adequate mental health services to her.[8] She claims that "because greater services were not provided . . . with respect to her mental disability, the application of the failure to rehabilitate ground was unconstitutional as it applied to the respondent." She seeks review under *State* v. *Golding*, 213

---

[6] The respondent was admitted into the hospital on an emergency basis in the spring of 1996 for cocaine and alcohol abuse.

[7] The respondent cites to article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, which provides in relevant part: "No person shall be denied the equal protection of the law . . . because of . . . mental disability."

[8] Throughout the five day trial, the respondent took the position that she was not mentally ill and that she failed to follow recommendations that she seek treatment in that area because she did not need it. She argues for the first time on appeal that she was mentally ill and that the department should have provided greater services. See footnote 4.

Conn. 233, 239–40, 567 A.2d 823 (1989),[9] but has failed to furnish a record adequate for this claim to be reviewed. While the record does disclose claims, disputes and denials of mental illness, the record is insufficient as to any findings of fact that the respondent's condition, if it existed, amounted to a "mental disability" protected under article first, § 20,[10] of the constitution of Connecticut, as amended by article twenty-one of the amendments. The respondent's unsupported assertion of a constitutional violation, therefore, cannot be reviewed. We, as a reviewing court, "cannot find facts, nor, in the first instance, draw conclusions of facts from primary facts found, but can only review such findings to see whether they might legally, logically and reasonably be found." (Internal quotation marks omitted.) *State* v. *Clark*, 160 Conn. 555, 556, 274 A.2d 451 (1970).

## III

The respondent next claims that the court violated her due process rights by not, sua sponte, ordering a competency examination and appointing a guardian ad

---

[9] Under *Golding* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *State* v. *Lasky*, 43 Conn. App. 619, 631 n.5, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

[10] "[A]mendment twenty-one's protection for those possessing physical and mental disabilities identifies the members of this class as a group especially subject to discrimination and requires the application of the highest standard of review . . . that standard requires strict scrutiny of the challenged government action." *Daly* v. *DelPonte*, 225 Conn. 499, 515, 624 A.2d 876 (1993).

litem for her prior to the termination petitions being filed by the commissioner. While the respondent does cite one case in her brief on this issue,[11] the five sentences composing this claim are deemed inadequate, lacking factual assertions, analysis and substantive discussion. "Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." *In re Shyliesh H.*, 56 Conn. App. 167, 181, 743 A.2d 166 (1999). The respondent's claim is inadequately briefed and is deemed abandoned.

## IV

Lastly, the respondent claims that she was denied due process of law because her attorney rendered ineffective assistance by failing to request that a guardian ad litem be appointed for her and that a competency hearing be ordered prior to and during the termination proceedings.

"In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. General Statutes § 45a-717 (b). Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel. *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979). In determining whether counsel has been ineffective in a termination proceeding, we have enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of

---

[11] The respondent states: "In *In re Alexander V.*, 223 Conn. 557, 567, 613 A.2d 780 (1992), our . . . Supreme Court concluded that 'under certain circumstances, due process requires that a hearing be held to determine the legal competency of a parent in a termination case.' "

the] law. . . . Id. The respondent must prove that her attorney fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights. Id." (Internal quotation marks omitted.) *In re Alexander V.*, 223 Conn. 557, 569–70, 613 A.2d 780 (1992).

"In order for counsel to be deemed ineffective, the evidence of incompetency must be substantial enough to support the conclusion that requesting a competency hearing was the only course of action a reasonably effective lawyer would have pursued." Id., 570. Our review of the record fails to disclose that the evidence was sufficient to have necessarily raised a reasonable doubt in the mind of the trial judge as to the respondent's ability to understand the nature of the proceedings or to assist her attorney in his representation of her. We, therefore, must also conclude that the record does not support the claim that her attorney was ineffective, if the evidence would not have necessarily prompted a lawyer of ordinary training and skill to raise the issue of the respondent's competency.

As in *In re Alexander V.*, the respondent here first claims that "[t]he evidence of incompetency in this matter is substantial enough to support the conclusion that . . . a competency hearing was the only course of action a reasonably effective lawyer would have pursued," and then alludes to a claim that her counsel was ineffective because a better record of incompetency could have been developed setting forth other facts to make an adequate trial record for review. While we may decline to review a claim that the respondent fails to articulate legal authority for or fails to show how the alleged incompetency of her trial counsel contributed to the termination of her parental rights; *In re Michael L.*, 56 Conn. App. 688, 700, 745 A.2d 847 (2000); where there is nothing in the record to support a claim that a respondent lacked the ability to understand the nature

of the proceedings or to assist her attorney in his representation of her, our review is summary. As an appellate court, we are limited to the record before us in deciding the merits of an appeal. Insofar as the respondent in this termination proceeding presents a general claim of "ineffective assistance of counsel," the record is inadequate in that it lacks evidence as to a standard of competency, that is, the range of competence displayed by lawyers with ordinary training and skill in this field of law. The record also does not show whether her counsel's actions fell below that range and, if so, whether her counsel's conduct contributed to the termination of the respondent's parental rights. Such evidence could be developed through an adversarial hearing allowing for cross-examination similar to that of a habeas corpus proceeding. See *In re Alexander V.,* supra, 223 Conn. 571 n.12.

The judgments are affirmed.

In this opinion the other judges concurred.