[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDINGS ON PETITION FOR TERMINATION OF PARENTAL RIGHTS
These are petitions seeking the termination of parental rights based on the grounds of abandonment as to the putative and legal fathers, the absence of an ongoing parent-child relationship as to the legal father, and failure to rehabilitate and previous termination of parental rights of another child as to the mother.
 I
On April 1999, the respondent mother, Renalda B., gave birth to a son, Brian B. At the time she gave birth, the mother had positive toxicology for cocaine, having used that drug throughout the pregnancy. The mother has a chronic, twenty-year substance abuse history involving alcohol and cocaine. She is intellectually limited, her full scale IQ being 62. She suffers from paranoid schizophrenia.
The Department of Children and Families (DCF) obtained an order of temporary custody while Brian still was in the hospital. On August 23, 1999, Brain was committed to DCF as "uncared for." The mother was given orders or "specific steps" to facilitate the return of her son.
The mother reported to DCF that she was divorced and that Brian's father was David M., whose whereabouts was unknown. On June 1, 2000, DCF filed a petition to terminate the parental rights of the mother and David M. The mother subsequently admitted that she had been married to Carlos B. and that, although she had been separated from him for several years, they were not divorced. On July 3, 2000, DCF filed a second petition to terminate the parental rights of Carlos B. Service on both putative fathers was made by publication. Neither Carlos B. nor David M. has every seen Brian or inquired about him.
Because there was a question as to the mother's competency, the court ordered a competency evaluation. See In re Alexander V., 223 Conn. 557,565-66, 613 A.2d 780 (1992). Both the examiner conducting the evaluation, Dr. David Krulee, M.D., and, thereafter, the court, found the mother to be competent. Based on the recommendation of Dr. Krulee, the court appointed a guardian ad litem for the mother. CT Page 1303
 II Mandatory Findings
In determining whether to terminate parental rights in a case not based on parental consent, General Statutes § 17a-112(d) requires the court to consider and make written findings regarding the following matters.
1. Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.
The court agrees with DCF's claim that it timely offered the respondent mother several services to facilitate the return of her son. The services included mental health treatment, substance abuse treatment, treatment for sleep apnea, parenting classes and visitation. These services were offered at Connecticut Mental Health Affiliates (CMHA) and the YWCA.
In addition, in 1999, the mother was treated on an outpatient basis at the Wheeler Clinic and was in-patient, in residential treatment at the Chase Center. She also was treated at the Hartford hospital "Blue Hills" facility and at the Institute of Living. Since Brian's birth, she has received intensive outpatient services with the Assertive Community Treatment Team (ACTT) of CMHA.
DCF was unable to provide services to David M. and Carlos B. because their whereabouts has, since Brian's birth, been unknown.
2. Finding regarding whether DCF has made reasonable efforts to reunitethe family pursuant to the Federal Child Welfare Act of 1980, asamended.
The court finds by clear and convincing evidence that DCF has made reasonable efforts to reunify mother and son. The finding is not necessary, however, because the court has previously found that further efforts at reunification were inappropriate. The court finds by clear and convincing evidence that the putative father and the legal father were unable or unwilling to benefit from reunification, their whereabouts being unknown.
3. Finding regarding the terms of any applicable court order enteredinto and agreed upon by any individual or child-placing agency and theparent, and the extent to which all parties have fulfilled theirobligations under such order. CT Page 1304
The respondent mother was ordered to: Keep all appointments set by or with DCF; cooperate with DCF home visits, announced or unannounced, and visits by the child's court-appointed attorney and/or guardian ad litem; keep child's whereabouts and your own whereabouts known to DCF, your attorney and the attorney for the child; participate in parenting and individual counseling and make progress toward the identified treatment goals; Treatment goals should include, but are not limited to, the following: Therapy to address mental health issues and substance abuse treatment; accept and cooperate with in-home support services referred by DCF and make progress toward the identified goals; submit to substance abuse assessment and follow recommendations regarding treatment; successfully complete substance abuse treatment including inpatient treatment if necessary and follow recommendations regarding aftercare treatment, including relapse prevention; submit to random drug testing; time and method of the testing shall be at the discretion of DCF; follow recommendations of service providers; sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before this court; secure and/or maintain adequate housing and legal income; do not engage in substance abuse; have no further involvement with the criminal justice system; cooperate with the Office of Adult Probation or parole officer and comply with conditions of probation or parole; consistently and timely meet and address the child's physical, educational, medical, or emotional needs, including, but not limited to, keeping the child's appointments with his medical, psychological, psychiatric, or educational providers; make all necessary child-care arrangements insuring that the child is adequately supervised and cared for by appropriate caretakers; immediately advise DCF of any changes in the composition of the household to ensure that the change does not compromise the health and safety of the child; maintain the child within the State of Connecticut during the duration of this order. The child may temporarily travel out of state only if the respondent obtains authorization from DCF or the Court in advance.
The respondent mother has kept her appointments with DCF and has kept her whereabouts known. She has been generally albeit not totally cooperative with CMHA, which is largely responsible for her. However, she was disruptive early in the program offered by the Chase Center, to which she was referred by DCF. As a result she did not participate in the parenting training, substance abuse treatment, relapse prevention and individual counseling offered by the Chase Center.
The respondent also initially refused and then attended only five sessions of the YWCA's parenting program. CT Page 1305
With specific reference to substance abuse treatment, the respondent, as observed supra, was unfavorably discharged from the Chase Center. On March 31, 2000, she began a substance abuse program at CMHA which she still attends.
She still has not successfully completed drug abuse treatment and aftercare. However, she has submitted to random drug testing and has signed releases as requested.
The respondent initially resisted the requirements that she maintain adequate housing and legal income. She has not been employed until recently, and periodically returns to prostitution. She has recently been employed at Burger King. Her income is managed by her case manager at CMHA. The respondent lived in a house along with six other adults in which she does not have her own room. On June 15, 2000, she was thrown out of this residence and placed by CMHA in a shelter. The following day DCF learned that she had tested positive for cocaine. Obviously, she could not adequately care for a child under such conditions.
The respondent has been unable to abstain from substance abuse. She uses alcohol excessively. She has admitted that she was intoxicated on drugs or alcohol for all of her thirty-five arrests.
The respondent has not avoided further involvement with the criminal justice system. She was arrested and briefly incarcerated for disorderly conduct in May, 1999. At the time of trial she was again incarcerated for drug related offenses. For these reasons, and because of her continued drug abuse, she has not been compliant with the terms of her probation.
The respondent has been fairly consistent with visiting Brian. However, she is unable to properly interact with or care for him during these visits. As a result, the visits must be supervised. Her hygiene also is poor at the visits. On several occasions, she extinguished a cigarette in the palm of her hand before visiting Brian and must be reminded to wash her hands before handling him.
The respondents David M. and Carlos B. were not given specific steps.
4. Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.
Brian has little or no feelings or emotional ties to the respondent mother. She has never been his caretaker and is unable to meaningfully CT Page 1306 interact with him during visits. Brian enjoys a close and loving relationship with his foster mother, Kelma F., whom he calls "mommy" and to whom he is strongly bonded. She is his psychological parent. He has been with her for fifteen of his nineteen months.
Brian has no feelings or emotional ties to the respondents David M. and Carlos B.
5. Finding regarding the age of the child.
Brian is twenty-one months old.
6. Finding regarding the efforts the parent has made to adjust suchparent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child toy the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.
The respondents David M. and Carlos B. have abandoned Brian and there is no evidence that they have made any efforts to adjust their circumstances, conduct or conditions to make it in the best interest of the child to be in the care of either David M. or Carlos B.
The respondent mother visits Brian fairly consistently. However, although she has had a period of seven months without abusing drugs other than alcohol, the court finds that she is likely to return to drug abuse, specifically the use of cocaine. In April, 2000 she borrowed money from her DCF case manager, ostensibly for transportation. She spent the money on drugs and became intoxicated with a stranger, spending the night in the back seat of the stranger's car. Her last confirmed use of cocaine was November 1, 2000, less than three months ago.
The mother continues to abuse alcohol. Indeed, she is unaware that the extent of her use of alcohol is excessive. For example, she related to her CMHA counselor an incident in which she had consumed an entire twelve pack of beer, yet did not see this as excessive.
The mother continues to suffer from schizophrenia. So long as she cooperates with the intensive services offered by CMHA, she receives medication for this mental illness. Her mental illness and intellectual limitations handicap her ability to plan and anticipate consequences. Her ability to function is further compromised by sleep apnea. She refuses to CT Page 1307 cooperate with wearing a sleep mask to alleviate the debilitating consequences of this condition.
At the time of trial the respondent was incarcerated for drug related offenses.
The respondent mother has not cooperated with parenting education. She has no ability to parent a small child. She is unable to care for herself independently.
7. Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theunreasonable act of any other person or by the economic circumstances ofthe parent.
Because the mother has been provided with transportation to scheduled visits with Brian, she has not "been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." She is prevented by chronic substance abuse, low intellect and mental illness.
The respondents David M. and Carlos B. have not been prevented from having a meaningful relationship with Brian.
 III
DCF claims that the respondents David M. and Carlos B. have abandoned Brian.[1] For such a claim, General Statutes § 17a-112(C)(a) requires that the petitioner prove that: "The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
"Appellate courts have repeatedly observed that [a]bandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . ." (Citations omitted; internal quotation marks omitted.) In re Angellica W., 49 Conn. App. 541,551, 714 A.2d 1265 (1998). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . CT Page 1308
"Section 17a-112(b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. . . ." (Internal quotation marks omitted.) In re John G., 56 Conn. App. 12,20-21, 740 A.2d 496 (1999).
The respondents David M. and Carlos B. have never seen Brian, have never inquired of DCF or the foster mother about him, and have never sent cards, gifts or money for his support. They have shown no "interest, concern or responsibility as to the welfare of the child. . . ." By clear and convincing evidence the court finds that the respondents David M. and Carlos B. have abandoned Brian.
 IV
DCF alleges that the mother has failed to be rehabilitated. For such a claim, General Statutes § 17a-112(c)(3)(B) requires that DCF prove that "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child.
In In re Shyliesh H., 56 Conn. App. 167, 180, 743 A.2d 165 (1999), the Appellate Court stated:
 In In re Eden F., [250 Conn. 674, 706, 741 A.2d 873
(1999)] our Supreme Court recently interpreted § 17a-112(c)(3)(B), explaining that "[p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that CT Page 1309 such rehabilitation must be foreseeable within a reasonable time. . . . Rehabilitate means to restore [a handicapped or delinquent person] to a useful and constructive place in society through social rehabilitation. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Citation omitted; internal quotation marks omitted.) [The Appellate Court] recently explained that in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue.
(Internal quotation marks omitted.)
By clear and convincing evidence, the court finds that there is no
likelihood that the respondent mother will be able to assume a responsible position in Brian's life in the foreseeable future. Her life consists of relapses of alcohol abuse, drug abuse, and prostitution. Control of her mental illness is dependent on CMHA ensuring that she takes her medication. In addition to schizophrenia, the respondent suffers from serious cognitive deterioration indicative of brain dysfunction. Her ability to parent has not improved since Brian's birth. The respondent has abused drugs as recently as November 1, 2000 and, as Dr. Logan Greene testified, she is likely to abuse drugs again. These conditions, together with her low intellect, compound each other and render her unable to be responsible for herself, let alone a child. See, e.g., In re Amanda A., 58 Conn. App. 451, 453, 755 A.2d 243 (2000).
 V
DCF also seeks to terminate the respondent mother's parental rights pursuant to General Statutes § 17a-112(c)(3)(E), which provides: "the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, CT Page 1310 such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families."
The court finds by clear and convincing evidence that Brian is under seven years of age, has been adjudicated uncared for, and the respondent, by virtue of limited intellect, chronic substance abuse, mental illness, and limited cooperation with services offered her, is "unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ." Moreover, the respondent has had her parental rights twice terminated, in 1996 and 1993, pursuant to petitions filed by the Commissioner of Children and Families.
 VI
"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child." In re Eden F., supra,250 Conn. 689. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in § 17a-112(d)."In re Tyscheicka H., 61 Conn. App. 19, 26, ___ A.2d ___ (2000).
For the reasons contained in the court's § 17a-112(d) findings, supra, the court finds by clear and convincing evidence that it is in Brian's best interests that all respondents' parental rights be terminated. The respondent mother cannot care for him; the respondents David M. and Carlos B., at the very least, do not wish to do so.
The court strongly disagrees with the suggestion of the attorney for the child that an "open adoption" be considered. "In Michaud v. Wawruck,209 Conn. 407, 415-16, 551 A.2d 738 (1988), th[e] court recognized a biological parent's ability to terminate her parental rights while retaining contact with the child and the adoptive family through an `open adoption agreement,' provided that such an arrangement is determined tobe in the best interests of the child." (Emphasis added.) Doe v. Roe,246 Conn. 655, 665 n. 4, 717 A.2d 706 (1998). Here, there is no evidence that such an agreement would be in Brian's interest. Indeed, the evidence CT Page 1311 is to the contrary since Brian has no meaningful relationship with the respondent mother. Moreover, intrusion into Brian's life of a biological parent so laden with problems of mental health, drug abuse and intellectual limitations would, in the future if not now, diminish his sense of stability.
The petition is granted as to all respondents. The court terminates the respondents' parental rights. The Commissioner of the Department of Children and Families is appointed statutory parent for Brian for the purpose of securing a permanent adoptive family. Since Ms. Kelma F., the current foster mother, has testified that she definitely will adopt Brian if permitted to do so, she shall be given the first opportunity to adopt. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Dated at Middletown this 23 day of January, 2001.
BY THE COURT
Bruce L. LevinJudge of the Superior Court