******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE SENA W.*

(AC 35756)

Beach, Alvord and Sullivan, Js.

*Argued November 13—officially released December 26, 2013***

(Appeal from Superior Court, judicial district of New
London, Juvenile Matters at Waterford, Driscoll, J.)

*Michael L. W.*, self-represented, the appellant (respondent father).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

SULLIVAN, J. The respondent father,[1] proceeding self-represented, appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Sena W. The respondent claims that (1) the court made factual findings not supported by the record, (2) the performance of his counsel was deficient, (3) the court improperly denied his motion to transfer guardianship of Sena to her paternal grandmother, and (4) the court's finding that the Department of Children and Families (department) made reasonable efforts to reunify him with Sena was clearly erroneous. We affirm the judgment of the trial court.

The court found the following facts. The respondent met Sena's mother in 2009. As articulated by the court, "their relationship included domestic violence, drug use, criminal activity, and eventually parenthood." Sena was born on February 3, 2011. Her mother was twenty-one at the time of her birth, and the respondent was forty-two. They were residing together at the time of Sena's birth. Sena was born testing positive for cocaine. On February 7, 2011, the petitioner, the Commissioner of Children and Families (commissioner), filed a neglect petition on Sena's behalf and sought an order of temporary custody. On that date, the court granted temporary custody of Sena to the commissioner and set specific steps for reunification with her parents. Sena has remained in the care and custody of the commissioner ever since.

Subsequently, the respondent failed to appear at three scheduled substance abuse evaluations, failed to comply with court-ordered hair toxicology testing, and failed to comply with the department's referral to parenting education classes. The court further found that the respondent's supervised visitations with Sena were "marked [by] his absences and his bellicosity as well as inappropriate parenting. . . . [A]rgumentative and disruptive behaviors as well as missing one-third of the scheduled visits led to a motion to suspend visits and end . . . supervision . . . [which] was granted by the court on May 19, 2011." In June, 2011, the respondent was sentenced to four years of incarceration.

On September 20, 2011, both parents submitted pleas of nolo contendere and Sena was adjudicated neglected and committed to the care and custody of the commissioner. Specific steps for reunification were given to the respondent on that date and acknowledged by him. As stated by the court, "[the respondent's] presenting issues, as reflected in [these] reunification steps, were his long history of substance abuse, his criminal activities, his anger management and domestic violence concerns, his lack of parenting skills, and his overriding mental health needs."

The commissioner filed a petition to terminate the

parental rights of both parents on October 27, 2011. As to the respondent, the commissioner alleged as the sole ground for termination a failure to achieve personal rehabilitation pursuant to General Statutes § 17a-112. A hearing on the petition was held for six days over a period of five months, during which the court heard testimony from eleven witnesses. On May 3, 2013, the court, *Driscoll*, *J.*, denied the respondent's motion to transfer guardianship of Sena to her paternal grandmother, granted the commissioner's petition, and rendered judgment terminating the respondent's parental rights pursuant to General Statutes § 17a-112 (j) (3) (B) (i),[2] for failure to achieve personal rehabilitation.[3] This appeal followed. Additional facts and procedural history will be presented as necessary.

I

As his first claim, the respondent challenges factual findings made by the court. Specifically, the respondent challenges the court's finding that the respondent was argumentative with staff during supervised visitations with Sena at Nutmeg Family Services (Nutmeg), and once improperly tried to feed two month old Sena an egg. We are not persuaded.

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of the [trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Valerie G.*, 132 Conn. App. 652, 656–57, 34 A.3d 398 (2011), cert. denied, 303 Conn. 937, 36 A.3d 696 (2012); see also *In re Alison M.*, 127 Conn. App. 197, 207, 15 A.3d 194 (2011).

The finding of the court now challenged by the respondent reads in full: "On April 14, 2011, [the respondent] and mother became embroiled in an argument verging on physical violence prior to [the respondent] leaving [the supervised visitation]. On May 5, 2011, two months after Sena's birth, [the respondent] brought an egg and strawberry banana baby food to feed the child. He became argumentative and strongly resistant to the supervisor's insistence that introduction of these foods into Sena's diet be done with the pediatrician's approval." The respondent asserts that the court's factual findings are clearly erroneous because the record indicates that he did not become angry with the mother on April 14, 2011, but on a different day, and that he became angry with the mother and not with a worker

of Nutmeg. Additionally, the respondent acknowledges that he made a "bad choice" to feed Sena an egg, "but did not repeat."[4]

These factual findings now challenged by the respondent are only two findings among pages of inappropriate behavior detailed by the court. Nevertheless, even if we were to assume that these two findings were essential to the court's finding of failure to achieve personal rehabilitation, we are not persuaded that these challenged findings of the court are clearly erroneous; on the contrary, the record supports each finding. First, the termination social study created by the department, admitted as an exhibit at trial, provides that: "[D]uring a supervised visit held on April 14, 2011 . . . [the respondent] and mother began to argue, escalating to a point where the visitation worker became concerned that it was going to become physical. . . . [The respondent] also demonstrated a limited understanding of child development and appropriate care for a child Sena's age as evidenced by his attempt to feed two month old Sena, eggs and strawberry banana baby food. On May 5, 2011 the undersigned worker attempted to meet . . . to address the concern of prematurely giving food to an infant. . . . [The respondent] was argumentative." Second, these events are also detailed in Nutmeg's supervised visitation forms, also admitted as an exhibit at trial, in which Nutmeg staff recorded the events of each of the respondent's visits and detailed any concerns. Finally, these events are detailed in the testimony of Monique Mooney, owner of Nutmeg, and Christina Little, a department social worker and author of the termination social study. While the respondent now asserts that each one of these entries is wrong, and that he learned from his mistakes, the record fails to support such claims.

As a result, on the basis of the record before us, we cannot conclude that the court's findings were clearly erroneous. There was sufficient evidence to support the court's factual findings and we are not left with a definite and firm conviction that a mistake has been made.[5]

## II

The respondent next claims that the performance of his counsel at the termination of parental rights trial was constitutionally deficient.[6] Specifically, the respondent alleges that his counsel did not receive the commissioner's exhibits until the day of trial, did not review these exhibits, and did not review the evaluation of Kelly Rogers, a psychologist, prior to his testimony. The respondent also alleges that counsel failed to prepare the respondent's older daughter as a witness, caused family members to wait days to testify, failed to prepare witnesses to testify, and "failed to allow respondent to study and examine reports to build [a] defense." We are not persuaded.

Ordinarily, we would not review the respondent's claim because it was not raised at trial, and therefore, the record is inadequate to review the claim. See *In re Dylan C.*, 126 Conn. App. 71, 90–91, 10 A.3d 100 (2011). Furthermore, the respondent's claim that he was prejudiced by counsel's alleged conduct is merely the statement of a legal conclusion and is not adequately briefed. Id.; see also *In re Jah'za G.*, 141 Conn. App. 15, 36, 60 A.3d 392, cert. denied, 308 Conn. 926, 64 A.3d 329 (2013). Nonetheless, the evidence on the face of the record demonstrates that the respondent has failed to establish that he received incompetent representation at his termination of parental rights trial.

"In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. . . . Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel. . . . In determining whether counsel has been ineffective in a termination proceeding, we have enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law . . . . The respondent must prove that [his] attorney fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights." (Citations omitted; internal quotation marks omitted.) *In re Amanda A.*, 58 Conn. App. 451, 459–60, 755 A.2d 243 (2000). "In making such a claim, it is the responsibility of the respondent to create an adequate record pointing to the alleged ineffectiveness and any prejudice the respondent claims resulted from that ineffectiveness." *In re Christopher C.*, 129 Conn. App. 55, 59, 20 A.3d 689 (2011). "In absence of findings by the trial court in this regard, we directly review the trial court record." *In re Jah'za G.*, supra, 141 Conn. App. 36; see also *In re Dylan C.*, supra, 126 Conn. App. 90–91; *In re Christopher C.*, supra, 58–59.

In regard to the respondent's assertion that counsel did not receive the commissioner's exhibits until trial and failed to review them, the record indicates that, although counsel did not receive the exhibits until the day of trial, he did review them. Specifically, the court granted a recess from trial to allow counsel to review the exhibits, and upon returning, counsel stated that he needed time to review the exhibits with the respondent but did not indicate that he himself needed more time. On the basis of our review, we conclude that the respondent's remaining claims of his counsel's inadequacies are not supported by the record. The respondent has not established that his attorney fell below

the standard of competency. *In re Amanda A.*, supra, 58 Conn. App. 459–60; see also *In re Dylan C.*, supra, 126 Conn. App. 93 ("[T]he respondent has not identified where in the record, and we find nowhere in the record, that [he] alerted the court to [his] dissatisfaction with counsel and asked the court to appoint new counsel. . . . The record discloses that the respondent's parental rights were terminated on the strength of the petitioner's case . . . ." [Footnote omitted.]).

### III

The respondent claims that the court improperly denied the respondent's motion to transfer guardianship of the child to the paternal grandmother. Specifically, the respondent challenges the court's finding that the grandmother declined to serve as a resource when contacted by the department in 2011, citing her age an impediment. The respondent further argues that the court's denial of his motion to transfer guardianship was an abuse of discretion. Because the court's factual finding was not clearly erroneous, we are not persuaded that the court's denial of the respondent's motion was a clear abuse of discretion.

The following additional facts and procedural history are relevant to this claim. On July 27, 2011, prior to her voluntary relinquishment of parental rights, Sena's mother filed a motion for a transfer of guardianship to Sena's paternal grandmother. This motion was adopted by the respondent on August 24, 2012, at the commencement of his termination of parental rights trial and was consolidated with trial.

The court found, in its May 3, 2013 written decision, that "[p]aternal grandmother, while well-intentioned, is not suitable. She was seventy-six years old at the time of trial, living alone in senior housing, and in declining health. She could not stand up to her son. She could not set boundaries for her son. . . . [The respondent's] niece testified as to her willingness to assist her grandmother, but her assistance would be limited and insufficient. Grandmother was anxious and tearful at meetings with [the department]. She has little interaction with Sena during her visits, often sitting in a chair and watching her. She ends every visit early. Recently the child became distraught at one visit and grandmother did not know how to console the child, though the child was consoled by a total stranger. Grandmother is doing what her son tells her to do, not necessarily because it is right for Sena, but because he demands it. Sena needs permanency and stability. . . . The plan to transfer guardianship to paternal grandmother for the near term offers only a future of instability and poor parenting."

First, the respondent challenges the court's finding that, "[w]hen contacted by [the department] in 2011 with respect to being a resource, grandmother declined and indicated that her age was an impediment." The

respondent asserts that this finding was clearly erroneous because the grandmother testified that she was never asked by the department to serve as a resource. A review of the record indicates that the grandmother did testify that she was never asked by the department to be a foster placement on the other hand, Little, a social worker for the department, testified that the department asked the grandmother about becoming a placement resource in March of 2011, and that the grandmother responded that she was not in a position to care for Sena due to her age. As a result, the record indicates that there was evidence before the court that the paternal grandmother declined to serve as a foster resource. As the court chose to credit this testimony over conflicting testimony from the grandmother herself, and because "[i]t is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony"; (internal quotation marks omitted) *In re Davonta V.*, 285 Conn. 483, 488, 940 A.2d 733 (2008); we cannot say that the court's finding was clearly erroneous.

Next, the respondent claims that the court should have granted his motion to transfer guardianship to the paternal grandmother. Specifically, the respondent asserts that the court improperly relied upon the grandmother's age, and that the court impermissibly failed to credit testimony that indicated that she has a family network to assist in the upbringing of Sena.[7]

"Questions of custodial placement generally are resolved by a factbound determination of what is in the best interest of the child . . . as shown by a fair preponderance of the evidence. . . . To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . [Appellate courts] are not in a position to second guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the [trial court] when they are based on reliable evi-

dence." (Citation omitted; internal quotation marks omitted.) *In re Valerie G.*, supra, 132 Conn. App. 662–63.

Here, contrary to the respondent's assertion, the age of the paternal grandmother was not the sole basis for the court's denial of the respondent's motion; instead, the court's opinion is clear that, while her age was one factor, the court found the paternal grandmother inadequate as a potential guardian primarily out of a concern for her declining health, the negative influence over her held by the respondent, and Sena's need for permanency and stability. Furthermore, the court acknowledged the willingness of extended family to assist, but determined that assistance would be limited and insufficient. Viewing the record as a whole, we are persuaded that the court carefully reviewed the evidence presented by all of the parties and decided reasonably that vesting guardianship of Sena in her paternal grandmother was not in Sena's best interest.

IV

As his final claim, the respondent asserts that the department did not make reasonable efforts to reunify him with his child, as required by § 17a-112 (j) (1). Specifically, the respondent asserts that the department failed to adequately accommodate visitation and notification with his incarceration and "did not take into account [the respondent's] right to raise daughter." The commissioner responds that this claim is moot because the respondent has failed to challenge the court's finding that he was unable to benefit from reunification efforts. We agree with the commissioner.

Section 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, *unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . .*" (Emphasis added.) Here, the court found, by clear and convincing evidence, that (1) the department made reasonable efforts to reunify the respondent with his child and (2) the respondent was unwilling or unable to benefit from those efforts.

The claim now raised by the respondent was addressed by our Supreme Court in *In re Jorden R.*, 293 Conn. 539, 979 A.2d 469 (2009). Interpreting the language of § 17a-112 (j) (1), the court stated: "Because the two clauses are separated by the word 'unless,' this statute plainly is written in the conjunctive. Accordingly, the department must prove *either* that it has made reasonable efforts to reunify *or, alternatively*, that the parent is unwilling or unable to benefit from reunifica-

tion efforts. Section 17a-112 (j) clearly provides that the department is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original.) Id., 552–53.

Here, the respondent has not challenged the court's finding that he was unable or unwilling to benefit from reunification efforts. This unchallenged finding provides an independent basis for meeting the requirement of § 17a-112 (j) (1). See id., 556; *In re Christopher C.*, 134 Conn. App. 464, 467–69, 39 A.3d 1122 (2012). As a result, review of the respondent's claim that the department failed to make reasonable efforts to reunify the respondent with his child would be improper because it cannot afford him any practical relief, and therefore, is moot. See *In re Jorden R.*, supra, 293 Conn. 557; *In re Christopher C.*, supra, 469. Accordingly, because it is "not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practice relief can follow"; (emphasis omitted; internal quotation marks omitted) *In re Alison M.*, 127 Conn. App. 197, 206, 15 A.3d 194 (2011); we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** December 26, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of Sena's mother were terminated by her consent on August 24, 2012. She is not a party to this appeal. Accordingly, we refer in this opinion to the respondent father as the respondent, and to the respondent mother as mother.

[2] General Statutes § 17a-112 reads in relevant part: "(j) The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . ."

[3] Specifically, the court determined, "In sum, [the respondent] failed to comply with any of [the department's] services or significant special specific step other than visitation, and that service was suspended due to [the respondent's] inappropriate behaviors and failure to appear. [The respondent] was incarcerated in June, 2011, and may remain so until 2015. The department can provide no services while [he] is in jail, and there was no credible testimony that the services provided will assist [him] when he is released. There was not even consistent testimony as to what services [he] has engaged in while incarcerated. He has not completed a long-term substance abuse program with any lasting success at any time in his life. His prognosis for success is very poor.

"[The department] made reasonable efforts to reunify Sena with [the respondent] and [he] was unable or unwilling to benefit from those efforts. . . . [The respondent] has not shown the wherewithal to meet his own needs. He has shown no ability to meet his daughter's needs while he is incarcerated, and he has no present parenting skills.

"The department has demonstrated that there is no reason to encourage

the belief that within a reasonable time, if ever, [the respondent] could assume a responsible position in his daughter's life. The adjudicatory grounds have been proven by clear and convincing evidence." The court determined that it was in the best interest of Sena to terminate the respondent's parental rights to free Sena for adoption.

[4] The respondent also asserts that, at trial, counsel for the commissioner impermissibly objected during testimony in attempt to "stop fact finding." As the respondent's allegation lacks legal support and substantive analysis, and the record indicates that counsel was objecting to the form of the question, in that the respondent's counsel incorrectly identified the author of a document, we conclude that this allegation is without merit.

[5] The respondent also challenges four other findings of the court that are either inadequately briefed or without merit. First, the respondent challenges the court's finding that "[a]t one point, the [department] worker was advised by paternal grandfather to avoid meeting [the respondent] at the next visit for the worker's own safety." The respondent asserts that this finding is based upon an impermissible reliance on hearsay testimony that was admitted in violation of the respondent's rights under the sixth amendment. A review of the record indicates that the court admitted this testimony not for the truth of the matter asserted, in that the respondent actually did threaten the worker's safety, but that it was admitted solely as evidence that the department received such a call. To the extent that the respondent asserts a violation of his constitutional rights, the respondent has failed to provide analysis or substantive discussion. "Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." *In re Shyliesh H.*, 56 Conn. App. 167, 181, 743 A.2d 165 (1999). The respondent's challenge is inadequately briefed and is deemed abandoned. See *In re Amanda A.*, 58 Conn. App. 451, 458–59, 755 A.2d 243 (2000).

Second, the respondent asserts that Kelly Rogers, a psychologist, testified that he met with two prison counselors, and that "[s]uch communications are absolutely privileged." The respondent failed to properly cite where in the transcript Rogers testified about meeting with prison counselors. While the respondent cites one case, *Cabrera* v. *Cabrera*, 23 Conn. App. 330, 580 A.2d 1227, cert. denied, 216 Conn. 828, 582 A.2d 205 (1990), and General Statutes § 52-146c, which establishes the psychologist-patient privilege, this claim lacks factual support, analysis, and substantive discussion. We decline to review this claim because it is considered abandoned. See *In re Amanda A.*, supra, 58 Conn. App. 458–59; see also *In re Isaiah J.*, 140 Conn. App. 626, 638–39, 59 A.3d 892 ("In [the respondent's] brief of this claim, the respondent addresses none of the evidence presented at trial with specificity. The respondent's argument is a series of statements paraphrasing the nature of the claim. Because [c]laims on appeal that are inadequately briefed are deemed abandoned . . . we are not required to review this claim" [Citation omitted; internal quotation marks omitted.]), cert. denied, 308 Conn. 926, 64 A.3d 333, cert. denied,    U.S.  , 134 S. Ct. 317, 187 L. Ed. 2d 224 (2013).

Third, the respondent asserts that "nowhere in the transcript did [Rogers] recommend termination." It is unclear, however, why the respondent makes this claim because the court did not make a finding that Rogers recommended termination. Further, the respondent failed to cite, and we find no reference, to the court terminating the respondent's parental rights upon the basis of such a recommendation by Rogers. Accordingly, this claim is without merit.

Fourth, the respondent challenges the court's finding that his mother declined guardianship of Sena and indicated to the department that her age was an impediment. We address this challenge in part III of this opinion.

[6] The respondent also requests a review of conflict of interest pursuant to General Statutes § 46b-129. The respondent asserts that a conflict exists because Sena's attorney and guardian ad litem, Priscilla Hammond, "has dealt with family of mother on a professional level which had custody of mother during court case in past." The respondent also asserts that he "was not allowed to be involved with consent of mother to her rights. Respondent must be involved in all of case." The respondent has failed to brief, however, how Hammond's representation amounted to a conflict of interest that adversely affected his interest. We therefore decline to review this claim. See *Bove* v. *Bove*, 128 Conn. App. 811, 817, 20 A.3d 31 ("Although we are solicitous of [self-represented] litigants, the rules of practice cannot be ignored completely. . . . We have considered [this claim] and conclude that [it is] inadequately briefed [and] the record on which to review . . . the [claim] is inadequate . . . ." [Citation omitted.]), cert. denied, 302 Conn. 904, 23 A.3d 1244 (2011).

[7] Primarily, the respondent "is not sufficiently convinced that [the] trial court did in fact protect [the] constitutional rights of [the] family." The respondent's concern is briefed not with substantive discussion and analysis but instead by a series of statements asserting the importance of family integrity. As a result, this claim is insufficiently briefed and deemed abandoned. See *In re Isaiah J.*, supra, 140 Conn. App. 638–39.